I assume, Mr. Frederick, that you're going to skip that issue to start with. I am, Judge Reinhard, and what I do want to do is focus on one of the issues that Goldman has raised in its cross-appeal, and that's an issue that the extender statute does not apply to statutory claims. If you agree with us in the first case that the extender statute displaces repost periods, then virtually every other issue in the Goldman cross-appeal is irrelevant. The American pipe issues are irrelevant. All five of the certificates that were dismissed by Judge Wu should be reinstated, and therefore the only other issue, if you agree with us in the first case, the only other issue that you would need to address would be the issue in Goldman's cross-appeal that the extender statute doesn't apply to statutory claims. And there is a couple of points that I want to make on that specific issue before reserving the bulk of my time as cross-appellee to address the issues that Mr. Clapper will be addressing. First, again, the plain language controls. Any action means any action, and it applies to any contract claim or tort claim. These are broad words, and by the time this statute was enacted, it was well settled in federal statutory law that the cluster of claims viewed in the universe of claims could be brought as either tort claims or contract claims. A tort claim, and this is something that they don't ever address in a compelling way, is a breach of a legal duty. That legal duty can arise at common law, and it can arise under statute. And by definitions in the leading tort treatises and in Supreme Court decisions that we have cited and in this Court's decisions, a tort claim is simply a breach of a legal wrong that gives rise to damages. And that can be done through a statute as the blue sky laws, the securities laws that we have invoked here. The Supreme Court in Meyer v. Hawley and this Court in the DiTullio case all talk about federal statutory claims as being tort-type claims. And if you look back at the history behind the extender statute, it drew structurally on a statute that had been enacted decades before that was Section 2415. And that statute also limited the universe or created, described the universe of claims as being contract claims or tort claims. This Court in the United States v. Lims case, which we've cited, construed Section 2415, and it did so by saying that federal statutes would either give rise to contract or quasi-contract claims and therefore be subject to a six-year limitations period, or the claims would be described as tort claims, in which case they would be subject to the three-year limitations period that was then in effect for 2415. The Tenth Circuit comprehensively addressed this very issue in its Nomura decision, the first one, before the case went up to the Supreme Court and was then backed down. And when the Tenth Circuit then re-adopted its prior opinion and it added at the beginning of its opinion an explanation of the Waldberger issue, it should not be overlooked that there's a long passage in its original opinion that addresses this very question. And it incites with approval the Ninth Circuit's cases that talked about 2415 as explaining this understanding between tort and contract. Then the last point that I want to make before sitting down is that, again, there's no reason why Congress would have enacted the legislative framework that the other side is advocating. What Congress was concerned about was empowering federal agencies to go after the wrongdoers to protect the assets of these failed institutions. It used the state law framework because it was concerned about preempting conflicting claims. Many of these claims had been brought under state law because this is a local credit union and it would have a tort claim or a contract claim. But by using the expansive words any action and by invoking the structure of 2415, it was in effect saying any claim and it simply would be characterized as a quasi-contract or as a tort claim for determining how long the claim should be brought. But it would be odd to suppose that Congress, federal legislature, empowering a federal agency to do actions that would protect the national treasury would say that we don't have federal claims that are brought under federal statutes that we could be bringing. That makes absolutely no sense at all. And there's no support in the broad wording of the text for that. The references to state law contract and state law tort are for preemption purposes but not for limitation purposes. And I would urge you to consider whether the other side's view makes any sense. And I would close by saying not a single judge, district, or circuit has accepted that argument. The Wall Street banks have been pushing that argument in every court where they have been sued for the consequences of their actions after the financial crisis and no judge has been persuaded by that argument. Thank you, counsel. May it please the court, Richard Clapper for the Goldman Sachs defendants. I'd like to reserve five minutes if it pleases the court. Would you put the microphone in front? Surely. I'd like to reserve five minutes if the court is amenable to it for rebuttal. If the other lawyers are not duplicates, they need to hear you. Okay. Thank you. Why are the opinions of the Tenth Circuit and Fifth Circuit not ones that this court should follow for three reasons following Waldberger. One is they disregard Waldberger. Two is they rely on supposed congressional intent, which Waldberger tells us one should not rely on if the statute is clear. And three is they rely on the argument that my friend Mr. Frederick has advanced that somehow this statement displaces the entire limitation structure that existed before. Let me quote the Fifth Circuit. Are you going to re-argue the whole extender issue? I have both extender arguments. Mr. Frederick was addressing the second one, which is the question of statutory or federal claims, and the fundamental argument that they make against that is the same as the one that they make against extending statutes of repose. And that is that somehow this statute, which as Judge Nelson noted, does not mention what it displaces, nonetheless displaces statutes of repose, displaces statutory claims, displaces federal claims. The Fifth Circuit, oddly, said exactly that. The Fifth Circuit said the extender statute describes what it creates, not what it displaces. Now we don't believe it created anything. We believe it amended or extended what was there, but it certainly doesn't say what it displaces, and that's the fundamental flaw of the argument that NCUA relies on. It could have said, Congress could have said, notwithstanding any statute to the contrary, the time limitation within which NCUA as conservator or liquidator can bring its claims is whatever, but it did not. The fact that it did say that for all claims, for all actions, sorry, that the NCUA is acting as conservator or liquidator, that that language somehow is broad. It's not broad. It just circumscribes what actions it applies to. They could have gone on and said, Congress could have, for all those types of actions, no brief should be longer than 25 pages. It could have said, Congress could have, the time limitation for NCUA to bring claims is, and then just describe it, but they did not, and that is the fundamental flaw. Now what they did do, following the circumcision of the actions that it follows, is to refer to particular claims, contract claims, tort claims. Six years for contract other than if state law is longer. Three years for tort unless state law is longer. There is simply no way to read that language to be other than what it is. It applies to contract claims. It applies to state law claims, and that's what it applies to. We note in our brief, our opening brief, at pages 30 to 31, that there's a good reason why they focused on contract and tort. Remember, this is the savings and loan crisis. This is a crisis where the concern was insiders who committed fraud, reached a fiduciary duty, made loans that they shouldn't have made. Contract and tort were exactly what Congress was focused on, but you don't have to reach that because it's clear that what's going on here is Congress is extending statutes of limitation, ones that depend on accrual, for only state law, contract, and tort claims. That's what the statute says. It does not say all claims in these actions brought by NCUA have a four-year statute or a three-year or a six-year statute. It simply doesn't say that. You have to read it out of the statute, and the statute is not the one that the NCUA would have it be. Now, they also talk about intent, congressional intent, as if this could solve all their problems. Now, the Supreme Court in the O'Melveny case made very clear that the more money intent is not sufficient to override statutory language, and that's exactly what they're saying. What weight do you give to the language with regard to any action? None. It applies to any action that the NCUA brings in these capacities, as conservator or liquidator. Clearly it applies to all those actions, but then it goes on to say for contract claims, this will be the statute. For tort claims, this will be the statute. So, yes, it's broad in the sense it covers all of that universe of actions, but it only covers claims in those actions. And if you go to Paragraph B, it talks about accrual for the actions described in Paragraph A. It does not contend that every claim brought by the NCUA is the beneficiary of an extended period of time. That's just not what the statute says. Now, if you take a look at the federal statute that Mr. Frederick referred to, 2415, there's a fundamental difference between that statute and this statute, and that is that that statute says claims founded on contract, claims founded on tort. And if you look at this court's decision in New Earth, which is, I believe, the first interpretation of 2415, that case makes clear in the majority that what's going on is argument by analogy. What are the statutory claims like? In that case, it was a fraudulent conveyance statute, and the question was, is it more like a contract claim or more like a tort claim? But the fact of the matter is it isn't either. It's a claim derived from a statute that gives you the right of action. That's what it is. And the dissenting opinion in that case, New Earth, made the point that Congress is asking the court there to characterize a statutory claim as either contract or tort when it isn't either. It doesn't match up with a common law tort or a common law statute. It's different, just like Sections 11 and 12 and the Blue Skies statutes are. Also, the interpretation that they want of this statute would give rise to peculiar results, because some federal statutes, first off, it doesn't say apply the applicable federal statute, but if you had the antitrust statute, which, by the way, is an accrual statute, and therefore a statute of limitations, not a statute of propose, but if you took the four-year statute under the Clayton Act and you call it tort-like, and it accrued six months before the NCUA took over, it would shorten the statute rather than lengthen it. There's just no way you can read the words to get where they want to go. Turning to the American pipe issues, it's really pretty straightforward. They try to make it something less than straightforward. I would rely on the Second Circuit opinion in Indyback and Judge Benitez's opinion in the Hildes v. Anderson case. It really is almost logical. American pipe has been called by the Supreme Court as equitable tolling. That's in the Young case, in the Irwin case. The Supreme Court noted in Lampf that a statute of repose cannot be tolled equitably, and therefore American pipe cannot toll a statute of repose. Let me just ask a question. If tolling occurs under American pipe, simply when a class action is filed, why should it be considered equitable tolling? Doesn't American pipe lack the traditional markers of equitable tolling? Well, the court in American pipe talked in the language of equity. It relied on Rule 23, yes, but no other statute. And to the extent that the Supreme Court did use legal tolling to alter a substantive right, it violates the Rules Enabling Act, which says rules cannot abridge, enlarge, or modify any substantive right. And the Supreme Court's been clear that a statute of repose is a substantive right in Lampf and otherwise, not a procedural right. And so by altering and abridging the statute of repose, if that's what the Supreme Court is doing by way of a rule, it's violating the Rules Enabling Act. Well, correct me if I'm wrong, but as I read American pipe, tolling under American pipe occurs regardless of whether a plaintiff can demonstrate that he has diligently tried to pursue his claims and regardless of the circumstances that barred him from being able to timely file. Instead, it occurs simply when a class action is foiled. That is true, but that doesn't mean the court was not applying principles of equity and explaining by equity, and I'll repeat, if it is legal tolling, it violates the Rules Enabling Act. The court cannot rely on the principles of Rule 23 to abridge the substantive legal right to have the benefit of a statute of repose. It simply can't do it, as both the Second Circuit and Judge Benitez pointed out. So you're caught on the horns of a dilemma. Either it's equitable tolling, which can't toll a statute of repose, or it's legal tolling, which violates the Rules Enabling Act. And that makes sense because this is a substantive right. This is not a procedural right. This is not something that Congress, in administering Rule 23, can alter. In American Pipe, the defendant in that case did argue that the limitation period should be understood as a substantive element, and the Supreme Court rejected that, saying that the proper test is not whether a time limitation is substantive or procedural, but whether tolling the limitation in a given context is consonant with a legislative scheme. Can you explain how your position is consonant with the legislative scheme? What Justice Blackmun was getting at was whether or not there was a substantive right involved. I would disagree with Justice Blackmun if what he's saying is that you could alter a statute of repose by applying Rule 23. The statute at issue in American Pipe was Section 4B of the Clayton Act, which keys off accrual of a claim and is therefore a standard statute of limitations, not a statute of repose. So perhaps it's not surprising that the Court didn't reach the Rules Enabling Act issue. The reason why I'm asking whether it's consonant with the legislative scheme is that we've got a situation where we're facing a circuit split. So we can go one way versus the other way. And the purpose of the statute of limitation is to bar claims for people who basically slept on their rights. So with regard to a state class action where the defendants are put on notice of what the claims are and you can prepare your defenses, I don't see how your position really is consonant with the legislative scheme when compared to the other positions, because now we've got to decide what makes more sense in terms of whether we should extend or toll the statute of limitations or not. Well, the equity involved in American Pipe is less the equity of what a potential plaintiff did or didn't do than the equity of discouraging a potential plaintiff from exercising that diligence. The Supreme Court did not want to put the potential plaintiff to the diligence of bringing a claim. That was the whole point of American Pipe. So there's no conflict in the goals. And it is, again, a statute of limitations which is subject to matters of equity. And the equity, both Judge Nelson and you have pointed out, is not to help out a plaintiff who slept on his rights, but rather to make sure that plaintiffs don't exercise their rights and bring a claim. That's the whole point of American Pipe tolling. But that's different for Repose because Repose is not a question of choice for the plaintiff. It's an absolute rule. It's a statute. It's a substantive right. It cannot be extended by equitable tolling, and if it's altered by legal tolling, it clearly violates the Rules Enabling Act. Let me just spend a few moments on the American Pipe standing issue. We rely on the language of American Pipe. American Pipe had noted that the Tenth Circuit, quite correctly, had noted itself that the failure to certify a class did not rely on three things. It didn't rely on dismissal of the claim for failure to state a claim, didn't rely on standing, and it didn't rely on bad faith, that the claim was brought in bad faith. It relied on other elements of Rule 23 to dismiss the claim. So right in American Pipe, the issue of standing is front and center, just as is the issue of whether or not there is a claim. Since then, there really has not been any kind of analysis of why standing is required, but there are two reasons. One is, without standing, there is no claim, and so, therefore, just like a failure to state a claim, there is no claim. And the other is that the whole concept of American Pipe tolling is to stop people who have a claim that is correctly within a class, or at least a pled class, from bringing their claims. The one case that they do cite, the Catholic Charities case, was an odd case involving a class where there was standing until Congress changed the rules and then they didn't have standing. So for a period of time, they clearly had standing, and then the statute changed and they didn't have standing. The NECA case complicates things and shows why a clear rule is necessary. Nobody can comprehend ahead of time, I think, how to apply the NECA case if it does apply, and to have a rule where either plaintiffs or potential plaintiffs are trying to figure that out, or defendants are at the mercy of how courts will decide it, perhaps with lots of appeals, is to create a rule that's so unclear as not to be equitable in the essence of American Pipe is equity. The rule that we propose, which is that you have to have actual standing and to represent a class, you have to have bought either in the tranche at issue or in the offering at issue, which every court other than NECA seems to think is the rule, including district courts in this district, is the proper rule. And it would benefit both potential plaintiffs, because they know whether to bring a claim or not, and potential defendants, because they know the liability that they face. I'll reserve the rest of my time. Thank you. Thank you, Kevin. Thank you. Let me start with Judge Nelson's question about American Pipe, because I think that although my friend argues for a number of the reasons for American Pipe, he doesn't get at the crucial point, which is that it is a rule that is designed to protect the federal courts from duplicative, unnecessary filings. And that's why when a putative class action is filed, it's deemed to be filed on behalf of all class members, whether or not the class has been certified yet. Why? Because the federal courts don't need to be swamped with a lot of duplicative filings that are simply protective of the absent class member's rights. That's why the Supreme Court explained that as an explanation of Rule 23, this was a way to ensure that the opt-out right, which is a crucial part of Rule 23, can be vindicated because you don't have a time limitation problem for the absent class members. As a rule of judicial efficiency, it falls outside the kind of normal framework of equitable tolling because we're not worried here about the diligence of the plaintiff. We're saying that the defendant is on notice that there is a class action out there and that the defendant now knows to protect the claim and that all other class members can stand down. They do not need to file their claims and flood the federal courts with unnecessary, repetitive, and duplicative lawsuits. That's why their argument about class standing is particularly ill-suited to this because class standing, that concept didn't even come up until the Michigan racial admissions case when the Supreme Court said there's this kind of issue about whether or not the people that are seeking admission to Michigan even have standing because they had already graduated from another institution. So the debate that's going on that Mr. Clapper notes is whether or not there is even a concept of class standing as opposed to is this person really a good representative on behalf of the class. And until that debate gets resolved, it makes no sense to invite plaintiffs to go ahead and file protective actions. That defeats the whole purpose behind American Pipe. There's not a Rule Enabling Act problem, Judge Winn, as you noted, because the Supreme Court in American Pipe itself addressed whether or not its rule would apply and would create the kind of Rule Enabling Act problem that you asked about. That is at footnote 26 of the Supreme Court's opinion in American Pipe itself. And the reason for that is that it is clearly a procedural rule that doesn't affect substantive rights because the defendants have already gotten notice of whether or not there is going to be a claim brought against them. Now, with respect to the other features of American Pipe, there's not any reason to treat Rule 13 differently than the Clayton Act that was at issue in American Pipe itself because that section 16 of the Clayton Act had even more emphatic language. It said, quote, shall be forever barred and has the same kind of wording as section 13's three-year period, which is, quote, in no event shall any action dot dot dot be brought. So the linguistic comparison between section 13, which says in no event shall be brought, and the Clayton Act provision, quote, shall be forever barred is exactly the same. So if you take the assumption that the Supreme Court was really dealing with a statute that we now colloquially characterize as repose, it's already applied American Pipe to a repose period. And so this Court is not going to be making any new law, particularly given the fact that this Court has already described that provision of the Clayton Act as a, quote, statute of repose. That's in the Duncan case, which we have cited in our brief. So if you look at American Pipe from first principles, what was the Supreme Court doing and why was it doing it and in what context was it doing it, we're on practically all fours with the kind of repose period that is being characterized under section 13. And the reason why, and this is really important to understand, the reason is that we do not want to flood federal courts with a lot of protective actions or to put plaintiffs to that burden. It doesn't do defendants any good. They've already gotten notice. It creates a bear trap for plaintiffs, and it certainly floods the federal courts with a lot of unnecessary cases that they otherwise shouldn't have to be burdened with. Now, I do want to address a couple of the points that he made about the extender statute. The anomaly that he notes about federal claims being somewhat shortened was actually addressed by the Tenth Circuit in the Nomura case, and the Tenth Circuit says that's not an absurdity because, in fact, the claim, the federal claim might have accrued, begun running before the agency took over that failed financial institution, so it's impossible to say whether the period is actually being shortened or not. But what we do know is that Congress wanted to give a certain amount of time for the federal agency to investigate and bring the claim, and it drew the line and it made the balance at this three- and six-year period depending on whether the claim could be described as a tort claim or whether it sounded in contract. Now, this nomenclature, sounded in contract or a contract claim, is kind of like lawyering gone back to high school debate. I mean, if we're talking about the real world here, we're talking about claims that involve breaches of legal duties that give rise to damages, which is the classic definition of a tort, or whether there is a claim arising from the breach of an agreement that two parties have, which is a contract or a quasi-contract. And to call it, to say that Congress somehow meant something different because it didn't use the words founded in is sort of like elevating law to some mystical level where it doesn't have practical effect in the real world, all because the Wall Street banks don't want to be accountable for the damage they cause to the country and to the failed financial institutions that they put out of business that we are representing in liquidation. So, he then says that any action can't possibly be as broad as the words any action, but as we've cited in our yellow brief in the Goldman case at page 27, a case from this court called Dosum Um versus Humana, 620 F3rd. This court said, quote, use of the word any suggests a broad meaning because read naturally, the word any has an expansive meaning. Any claim, any action, should involve both statutory claims as well as common law claims. Lastly, let me just say that O'Melveny, he references O'Melveny, but that case actually supports us. In O'Melveny, the question before the Supreme Court was whether or not there should be a freestanding federal common law that would fill in gaps that didn't exist in the statute. And the Supreme Court said, no, we're not going to observe federal common law when the FDIC acts in its liquidating agent capacity. But then the court cites the extender statute. And it says where Congress does something special by statute, of course we're going to give that the appropriate meaning to empower the agency, in that case the FDIC, with the powers that it needs. And it cites the exact statutory equivalent to the extender statute that's at issue here. There I think the statutory reference is 1834. Here it's 1787. But the Supreme Court has already said that this is the kind of statutory provision that courts ought to give full meaning to. Ultimately, as to both the American pipe issue and the extender statute, you have to step back for a second and say, why does their view of the universe make any sense at all? And the answer is, it doesn't. There's no reason why Congress would have created these implicit limitations on the agency's power. And there's no reason why federal courts ought to have a rule that invites litigants to flood courts with protective filings on the pain that if you don't do so, you will be forever barred from bringing your claim. Unless the court has any further questions, we'll submit. Thank you, counsel. Just a few points in rebuttal. American pipe footnote 29 rebuts Mr. Frederick's statement because the court there says that the history of sections 4B and 5B, those are the statute of limitations and tolling provisions of the Clayton Act, indicate that they're merely procedural. They weren't enacted at the same time as the cause of action was enacted. Both of those are not true for either the Section 1112 and Section 13 claims or for Blue Sky claims. So that supports our position. The extender statute, this whole idea that Congress wanted to give more time to NCUA, Judge Felser in her countrywide decision and Judge Swain in the Southern District of New York in her Bear Stearns case make the argument in rebuttal that the extender statute only extends what it extends. It clearly gave the NCUA something, but to say that it gave the NCUA time in all respects is simply to abuse the language of the statute. Now, with respect to the mystical interpretation that Mr. Frederick accuses me of, I believe in language. There's a reason why the Congress wrote tort claims and wrote contract claims. The Senate bill referenced Section 2415, the statute with the founded in contract and founded in tort, and Congress instead adopted the House version, which has the language that we're interpreting today. Words have a meaning. You can't just rewrite the statute to say the time the NCUA has shall be extended for all claims because it doesn't say that. With respect to O'Melveny, what O'Melveny says is that the NCUA, actually the FDIC as receiver, steps into the shoes of the failed bank and is subject to all defenses that the failed bank would have had pled against it. So it's not the government. It's the failed bank acting as conservator. And then finally, just to restate the point, the Supreme Court in CTS rejected the argument Mr. Frederick has been using all day that somehow there is a congressional intent to cause the NCUA to get a lot of money. It rejected it in CTS. It rejected it in O'Melveny. It's rejected it dozens of times before. NCUA is not entitled to an open wallet from all these defendants unless the statutory terms permit it. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: D.W. Nelson, Reinhardt, Nguyen